**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-62098-ALTMAN**
**21-cr-60094-ALTMAN-1**

**FRANTZ MERSIER**,

     *Movant*,

v.

**UNITED STATES OF AMERICA**,

     *Respondent.*

_____/

## ORDER

The Movant, Frantz Mersier, has filed a motion to vacate his federal conviction and sentence under 28 U.S.C. § 2255 ("Motion to Vacate") [ECF No. 1], and he's appended a corresponding Memorandum ("Mem.") [ECF No. 1-1]. The Respondent submitted its Response [ECF No. 6], and Mersier has filed his Reply [ECF No. 7]. We granted an evidentiary hearing on one of Mersier's subclaims for habeas relief, after which U.S. Magistrate Judge Jared M. Strauss wrote a report and recommendation ("R&R") [ECF No. 25], suggesting that we deny that subclaim. Mersier filed Objections [ECF No. 26], and the Respondent has submitted its Response to those Objections [ECF No. 28]. After careful review, Mersier's Objections are **OVERRULED**, the R&R is **ADOPTED in part**, and Mersier's Motion to Vacate is **DENIED**.

## BACKGROUND

A grand jury in our District charged Frantz Mersier with two crimes:  conspiracy to commit sex trafficking, in violation of 18 U.S.C. § 1594(c) ("Count 1"); and sex trafficking of a minor, in violation of 18 U.S.C. § 1591 ("Count 2"). *See* Indictment, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 16, 2021), ECF No. 19 at 1–2. On March 9, 2022, Mersier and the

Government entered into a plea agreement, by which the Government agreed to "recommend at sentencing" that we reduce Mersier's offense level by two points to reflect his "acceptance of responsibility" and to seek an "additional one-level decrease" if his offense level were later "determined to be 16 or greater[.]" Plea Agreement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 9, 2022), ECF No. 73 at 4. In exchange, Mersier waived "all his rights" to appeal his sentence. *Id.* at 8.

In his signed factual proffer, Mersier agreed to the following facts:  On December 9, 2020, law enforcement "recovered a 16-year-old female" (the "Victim") at a hotel in Hollywood, Florida. *See* Factual Proffer Statement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. May 18, 2022), ECF No. 74 at 1. Three days earlier, the Victim—who had escaped from her foster home—was driven by an adult male to a Miramar home "where Mersier lived[.]" *Id.* at 1–2. Mersier "wanted to have sex" with the Victim, who "complied because she felt that she had to" and because she'd been told that she "had to 'be nice' to Mersier since Mersier was allowing her to stay" at his home. *Id.* at 2. The next day, the Victim met Mersier's co-defendant, Paula Barboza, at Mersier's house. *Ibid.*  Barboza told the Victim that "she could make a lot of money by engaging in commercial sex acts and advertising herself on the internet for commercial sex." *Ibid.* At "Mersier's request," Barboza "instructed" the Victim "to pose provocatively" as Barboza photographed her "with [her] intimate" parts "exposed." *Ibid.* Barboza then drove the Victim to an apartment building, where she directed the Victim to have sex with an adult male who paid Barboza $100 for the service. *Ibid.*

The Victim returned to Mersier's residence to have "sex with another male," who was "friends with Mersier[.]" *Ibid.* The male paid the Victim $100 "for the sexual act, at which point Mersier took the money" from the Victim. *Id.* at 2–3. The Victim "stayed overnight" and "again had sex with Mersier." *Id.* at 3. The following day, the Victim was picked up from Mersier's residence to have sex with two adult males, after which "each paid her $100." *Ibid.* They took her to a shopping plaza "in

order to meet with Mersier," who directed the Victim to have sex "with another adult male[.]" *Ibid.* For pimping out the Victim in this way, Mersier was again "paid $100 in cash." *Ibid.*

The next day, Barboza drove the Victim to the hotel in Hollywood, Florida, where she "was ultimately recovered[.]" *Ibid.* When she "was alone in the hotel room," she called a relative, who called 911 on her behalf. *Ibid.* Law enforcement executed a search warrant at Mersier's residence that same day and recovered the Victim's clothing and personal belongings, which she had left there. *Id.* at 4. Officers also discovered Mersier's cell phone, which contained his social media account, in which law enforcement found images of Mersier at the shopping mall and "a video recording of Mersier at his [r]esidence [ ] with the [ ] Victim laying on the couch next to him[.]" *Ibid.* In the video, Mersier rapped the lyrics "fuck the feds" and "I get bitches and teach them." *Ibid.* Law enforcement also recovered "communications between Mersier and Barboza," in which the pair discussed "whether the [ ] Victim was speaking" to the police after her rescue. *Ibid.* The Victim identified Mersier "in a photographic lineup." *Id.* at 3–4. Mersier agreed that these facts—"which d[id] not include all facts known to the [G]overnment and [Mersier]"—were "sufficient to prove Counts 1 and 2 of the Indictment beyond a reasonable doubt." *Id.* at 4.

Before Mersier's sentencing, his lawyer objected to several sentencing enhancements the U.S. Probation Officer had proposed in its Presentence Investigation Report ("PSI"). *See* Objections to PSI, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. May 18, 2022), ECF No. 90. We applied all but one of those proposed enhancements and then deducted three points because Mersier had "timely accepted responsibility[.]" Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124. After a hearing, we sentenced Mersier to 235 months in prison on Counts 1 and 2—to be followed by a lifetime of supervised release. *See* Judgment, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. June 23, 2022), ECF No. 105 at 2–3.

Mersier timely appealed. *See* Notice of Appeal, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. June 30, 2022), ECF No. 108. On appeal, Mersier challenged our application of several sentencing enhancements. *See* Brief of the Appellant, *United States v. Mersier*, No. 22-12256-A (11th Cir. July 12, 2023), ECF No. 32 at 7. But the U.S. Court of Appeals for the Eleventh Circuit dismissed Mersier's appeal "pursuant to the appeal waiver in [his] plea agreement[.]" Mandate, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Nov. 3, 2023), ECF No. 129 at 5. On October 28, 2024, Mersier filed this Motion to Vacate under 28 U.S.C. § 2255, alleging that his lawyer was constitutionally "ineffective during the pretrial stage," the "plea stage," and the "sentenc[ing] stage" of his criminal proceedings. Motion to Vacate at 4–7.

We granted Mersier an evidentiary hearing "only on his claim that his guilty plea was involuntary because his lawyer failed to advise him about his option to plead guilty without a plea agreement so that he could keep his appellate rights." Order Granting Evidentiary Hearing [ECF No. 8] at 1. And we "reserve[d] ruling on Mersier's other claims until the evidentiary hearing [was] complete[d]." *Id.* at 3. On June 27, 2025, Magistrate Judge Strauss held that evidentiary hearing and heard testimony from Mersier and his trial lawyer, Jorge Del Villar. *See* Paperless Minute Entry [ECF No. 19]. Magistrate Judge Strauss then wrote an R&R, in which he found that Mersier hadn't established his lawyer's ineffective assistance. *See generally* R&R. This Order follows.

**STANDARDS**

**A.      Motions to Vacate Under 28 U.S.C. § 2255**

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack."

4

§ 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

### B. Ineffective Assistance of Counsel

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. CONST. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88). This same standard applies to alleged errors made by both trial and appellate counsel. *See Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 979 (11th Cir. 2013) ("A claim of ineffective assistance of appellate counsel is evaluated under the same standard as for trial counsel.").

To establish the first prong (deficiency), "a petitioner must [show] that *no* competent counsel would have taken the action that his counsel did take[.]" *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (emphasis added). So, if "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial," counsel could not have performed deficiently. *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong (prejudice), "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To succeed on this prong, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. If the defendant pleads guilty, the prejudice prong is modified so that the defendant must instead show "that there is a reasonable probability, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

**DISCUSSION**

Mersier asserts three grounds for habeas relief. He says that his lawyer was constitutionally ineffective during (1) the "plea stage," Motion to Vacate at 5; (2) the "pretrial stage," *id.* at 4; and (3) the "sentencing stage" of his criminal case, *id.* at 7. All three grounds are meritless.

### I.        The "Plea Stage"

Mersier's plea-stage claim actually includes three subclaims. Specifically, he says that his lawyer was ineffective for (1) "[n]ot advising [Mersier] of the benefits of pleading guilty without a plea [agreement]" ("Subclaim One"); (2) "[b]eing ignorant of the law relating to First Step Act and a[n] [18

6

U.S.C.] § 1591 charge" ("Subclaim Two"); and (3) "[a]dvising [him] to plead guilty" to avoid "a lot more time in jail" ("Subclaim Three"). Mem. at 8 (cleaned up). We reject all three subclaims.

### a.      The R&R: Subclaim One

### 1.      Background

In Subclaim One, Mersier argues that he was "prejudiced" by his lawyer's failure to inform him that "he could [enter] an open plea." Mem. at 11 (cleaned up). Mersier says that he "never wanted to give up his constitutional right to appeal his sentence." *Id.* at 9. But he did—by signing a plea agreement that expressly waived "all his rights" to appeal "in exchange" for the Government's promise to request a sentence reduction. Plea Agreement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 9, 2022), ECF No. 73 at 8. Mersier adds that, although he "filed a non-frivolous appeal," his appeal was "denied because of the appeal waiver in his plea agreement." Mem. at 10. He now insists that he told his lawyer that he preferred to "keep his appeal rights" over "the benefit of [a three]-point [sentence] reduction." *Ibid.* Had Mersier "known that he could file an open plea," he would've done so "much earlier" and "would not have planned for trial[.]" *Ibid.*

We granted Mersier an evidentiary hearing on this subclaim. During that hearing, Magistrate Judge Strauss heard testimony from Mersier and his lawyer, Jorge Del Villar. *See* R&R at 3. Both witnesses agreed that, on March 5, 2022, "Del Villar visited Mersier to review a proposed plea agreement." *Id.* at 4. They also agreed that Del Villar "reviewed the plea agreement paragraph by paragraph with Mersier" and that "Mersier understood the terms of the plea agreement, including the appellate waiver." *Ibid.* But they dispute what happened next. Mersier claimed that Del Villar told him that "he only had two options: (1) sign the plea agreement, or (2) go to trial." *Id.* at 5. He maintained that "Del Villar never told [him] that he could alternatively enter an open plea." *Ibid.*

Del Villar, however, testified that he "told Mersier that Mersier had the option of going straight to the Court for an open plea," which he said was his general practice, and that he ultimately

"recommended to Mersier that he accept the plea agreement," in which the Government "agreed to recommend that the Court reduce Mersier's offense level by two levels based upon acceptance of responsibility and to also request an additional one-level reduction" under the Sentencing Guidelines. *Ibid.* If Mersier had simply pled straight up to the Court, Del Villar believed that Mersier "would be able to obtain, at most, the two-level reduction for acceptance of responsibility," and he wasn't sure that the two-level reduction was guaranteed "without the plea agreement." *Ibid.*

On cross examination, Del Villar conceded that, when "Mersier's habeas counsel contacted [him] in February 2025, Del Villar said he did not recognize the name Mersier" or Mersier's case. *Id.* at 6. But, after speaking with his co-counsel and "looking at entries on the docket and some of the case discovery," Del Villar said that "he was able to refresh his recollection[.]" *Ibid.* On whether he "advised Mersier of the option of an open plea," Del Villar testified that, "even aside from his general practice[,] . . . he remembered doing the math with Mersier related to how Mersier's sentence would be affected with or without the two-level reduction for acceptance of responsibility and the additional level that the Government agreed to request" under the plea agreement. *Ibid.* Magistrate Judge Strauss "found Del Villar's testimony more credible than Mersier's testimony," both generally and "specifically on the central dispute of whether Del Villar advised Mersier that he had an option to enter an open plea." *Id.* at 8.

Magistrate Judge Strauss therefore determined that Mersier failed to show deficient performance because he found that Del Villar advised him of his right to enter an open plea. *See id.* at 13. He alternatively found that, "even if [he] had found Mersier's testimony more credible than Del Villar's testimony[,]" his claim "still failed on the prejudice prong." *Ibid.*

### 2.   Standards

**Report and Recommendations**. When a magistrate judge's findings or recommendations are properly objected to, we review the objected-to portions *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); FED.

R. CIV. P. 72(b)(3). "In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). We "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(C).

We may not reject a magistrate judge's credibility findings without hearing the disputed testimony. *See United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007) ("[A] district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings."). "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible *only* when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'" *Amlong & Amlong, P.A.*, 500 F.3d at 1250 (citing *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)).

**Ineffective Assistance of Counsel**. A movant can show his lawyer's deficient performance if he establishes that his lawyer "fail[ed] to advise [him] of the option to enter an open plea." *Saez v. United States*, 2023 WL 1781684, at *6 (M.D. Fla. Feb. 6, 2023) (Chappell, J.) (cleaned up); *see also West v. United States*, 2013 WL 1798945, at *3 (M.D. Fla. Apr. 29, 2013) (Steele, J.) ("Failing to advise a defendant of his ability to plead 'straight up' to all counts in an indictment without a plea agreement constitutes deficient performance."); *cf. Taylor v. United States*, 2017 WL 5202358, at *3 (11th Cir. Aug. 18, 2017) (implying that a lawyer's failure to "discuss [a] 'straight-up' plea option" with his client could constitute deficient performance under *Strickland*). "While such an option carries some inherent risks which counsel must discuss with his client[,] it is nonetheless an available option which must be

9

discussed with a defendant." *West*, 2013 WL 1798945, at *3 (citing *Dasher v. Att'y Gen., Fla.*, 574 F.3d 1310, 1317–18 (11th Cir. 2009)).

To show prejudice, the movant must also show that, had his lawyer alerted him of this option, there was a "reasonable probability" that each of the following four events would have occurred: (1) he would have actually entered an open plea; (2) "the district court would have accepted" his open plea; (3) he "would have then appealed" his sentence; and (4) his sentence "after that appeal 'would have been less severe than under the judgment and sentence that in fact were imposed.'" *Taylor*, 2017 WL 5202358, at *3 (quoting *Lafler v. Cooper*, 566 U.S. 156, 163–64 (2012)).

### 3. Analysis

Magistrate Judge Strauss determined that Mersier "fail[ed] at the deficient performance prong" because he found that Del Villar "did advise Mersier of the option to go straight to the Court for an open plea." R&R at 13. Mersier advances three objections to Magistrate Judge Strauss's deficient-performance findings. In sum, he says that the judge erred in concluding: (1) that Del Villar's testimony "was more credible than that of [Mersier]" ("Objection One"), Objs. ¶ 1; (2) that Mersier "was apprised of the right to enter an open plea" ("Objection Two"), *id.* ¶ 2; and (3) that Del Villar "was not ineffective and that [Mersier]'s Motion be denied" ("Objection Three"), *id.* ¶ 7. We **OVERRULE** all three objections.

Starting with Objection One, we defer to Magistrate Judge Strauss's finding that Del Villar was more credible. For one thing, the Magistrate Judge said that he relied in part on his "observations of the witnesses during their testimony." R&R at 8. "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002). We must "afford considerable deference to the magistrate judge's . . . credibility determinations," especially where, as here, they rest on firsthand observations

of witness demeanor—something the cold record cannot capture. *United States v. Corley*, 408 F. App'x 245, 246 (11th Cir. 2011) (citation omitted); *see also United States v. Shabazz*, 887 F.3d 1204, 1215 (11th Cir. 2018) (giving "great deference to [a] district court's credibility determinations" on appeal when the district court agreed with a magistrate judge's credibility determinations).

For another, Mersier hasn't given us any "articulable basis" for rejecting Magistrate Judge Strauss's credibility finding. *Amlong & Amlong, P.A.*, 500 F.3d at 1250. Mersier says that Del Villar was less credible because, "[w]hen [he] was originally contacted by undersigned counsel[,] [Del Villar] didn't even remember the name Franz [sic] Mersier and didn't even remember handling this case." Objs. ¶ 1. Three points on this. *First*, the Magistrate Judge found that Del Villar sufficiently rehabilitated himself by explaining that, as he reviewed docket entries, witness names, and more-specific case information, he remembered working with Mersier and "doing the math" on how Mersier's sentence would change depending on whether he entered an open plea or accepted the plea agreement. R&R at 6. *Second*, Del Villar also said that he followed his "general practice," and that, "for years," he has told clients that they don't "have to accept the plea agreement" and that "they have the alternative options of proceeding to trial or going straight to the Court and pleading guilty." *Id.* at 4–5. *Third*, Magistrate Judge Strauss listed independent reasons for finding Mersier "less credible overall," including his "inconsistent" statements regarding his "desire to proceed to trial" and his sworn declaration that "he did not know the [V]ictim was a minor at the time of the offense," even though he conceded he did know in his factual proffer.[1] Since these are more than enough reasons to defer

---

[1] Mersier also says that Del Villar had "no valid reason to advise [Mersier] to sign a plea agreement waiving the right to appeal in this case," and that this advice—which arose because Del Villar "was concerned that [we] would sentence [Mersier] more severely if there was no written plea agreement"— was "patently ineffective[.]" Objs. at 3. For this reason, Mersier says his claim that he "was never told" that he could enter an open plea was "more credible" than Del Villar's testimony. *Ibid.* But Mersier doesn't explain why Del Villar's advice to sign a written plea agreement was ineffective. All he says is that we "would not treat a Defendant more harshly for pleading to all counts of an indictment straight to the Court as opposed to signing a plea agreement." *Id.* at 4. While that may be true, he hasn't shown

to the Magistrate Judge's finding that Del Villar was more credible, we're "not required to rehear witness testimony." *Cofield*, 272 F.3d at 1305 (alteration added) (citing *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980)). Objection One is therefore **OVERRULED**.

As for Objection Two—that the Magistrate Judge incorrectly found that Mersier was told of his right to enter an open plea—it fails for the same reasons as Objection One. After all, Magistrate Judge Strauss said that this finding "boil[ed] down to a credibility determination." R&R at 13 (cleaned up). As we've said, we defer to that finding. So, Objection Two is **OVERRULED**.

And Objection Three—that the Magistrate Judge was wrong in concluding that Del Villar wasn't ineffective—also fails. Since Del Villar told Mersier that he had the right to enter an open plea, he didn't act deficiently. "And if there is no performance deficiency, there can be no ineffective assistance of counsel based on counsel's action[,] regardless of prejudice." *Parnell v. United States*, 149 F.4th 1268, 1276 (11th Cir. 2025). So, Magistrate Judge Strauss's finding that Del Villar's performance wasn't deficient compelled his conclusion that Mersier's ineffective-assistance claim should be denied. Objection Three is thus **OVERRULED**.

---

that his lawyer's advice that he take the bird in the hand—the third point—constitutes ineffective assistance.

In any event, Del Villar suggested that Mersier sign the plea agreement because he seemed to think that we were *more* likely to take a few points off Mersier's sentence with the Government's recommendation than without one. Even if that was bad advice, "[b]ad advice alone is insufficient to prove the deficient performance required for constitutionally ineffective assistance of counsel." *Paige v. United States*, 2009 WL 700659, at *3 n.2 (M.D. Fla. Mar. 16, 2009) (Kovachevich, J.) (cleaned up); *see also United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983) ("Only where a defense decision is completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy, is further review into counsel's competence required." (citations omitted)).

More to the point, the salient issue in Subclaim One isn't whether Del Villar gave bad advice— it's whether he apprised Mersier of his right to plead straight up. And, as we've said, Magistrate Judge Strauss found, after hearing the testimony firsthand, that Del Villar *did* give Mersier that choice, principally because of Del Villar's demeanor, his rehabilitation after cross, his "motivations," his "extensive experience as a criminal defense attorney," and Mersier's inconsistent "testimony and conduct," which made him appear "less credible." R&R at 8. Again, we must defer to the Magistrate Judge's credibility findings.

Since we agree with Magistrate Judge Strauss's finding that Mersier's lawyer wasn't deficient, we needn't address Mersier's prejudice-related objections.[2] *See Spriggs v. United States*, 2022 WL 2345758, at \*16 (11th Cir. June 29, 2022) ("Having concluded that Spriggs'[s] counsel's performance was not constitutionally deficient, we need not reach the question of prejudice." (citation omitted)); *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) ("If a defendant fails to satisfy either *Strickland* prong, we need not address both."). Mersier's remaining objections are **OVERRULED**, and the R&R is **ADOPTED in part**. We therefore **DENY** Subclaim One.

*     *     *

Having resolved the R&R, we'll proceed with the remaining grounds—and their attendant subclaims—in Mersier's Motion to Vacate.

### b.     Subclaim Two

In Subclaim Two, Mersier claims that his lawyer failed to tell him about his "ineligibility" for time credits under the First Step Act ("FSA"). Mem. at 8. When Mersier "first learned about the First Step Act," he asked his lawyer whether he'd be ineligible for time credits if he pled guilty *only* to Count 1 (and *not* to Count 2). *Id.* at 9. Mersier's lawyer explained that, "no matter what [he] ple[d] guilty to," Mersier "would be ineligible" for time credits. *Ibid.* (cleaned up). After pleading guilty to both counts, Mersier learned that he could have remained eligible for FSA credits "had he not [pled guilty] to" Count 2. *Ibid.* (cleaned up). Mersier apparently believes that, "had counsel properly advised [him] of [his] First Step Act ineligibility," he "would have been in a better position during the plea negotiation

---

[2] Mersier lists seven objections to the R&R, but only three arguably relate to Magistrate Judge Strauss's deficient-performance determinations; the rest relate to his findings under *Strickland*'s prejudice prong. *See* Objs. ¶¶ 3–6 (objecting to Magistrate Judge Strauss's findings that Mersier failed to "satisfy the requisite prejudice to establish ineffective assistance of counsel" and that "there is no reasonable probability that [Mersier] would succeed in an appeal"). We needn't reach Mersier's prejudice-based objections, since we agree with the Magistrate Judge that Mersier's lawyer advised Mersier of his right to enter an open plea and therefore wasn't constitutionally ineffective.

process and would have insisted on going to trial for Count 2." *Ibid.* And Mersier contends that he "would have received, to date, over 300 days off [his] sentence." *Ibid.*

As an initial matter, Mersier is right that he's no longer eligible to earn FSA time credits. Under the FSA, "[t]ime credits earned . . . by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release" by the "Director of the Bureau of Prisons[.]" 18 U.S.C. § 3632(d)(4)(C). But "a prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for a conviction under . . . [a]ny offense under chapter 77, relating to peonage, slavery, and trafficking in persons, *except for* sections 1593 through 1596." 18 U.S.C. § 3632(d)(4)(D)(xxvii) (emphasis added). Here, Mersier pled guilty to Count 2—sex trafficking of a minor in violation of 18 U.S.C. § 1591— which is "not included in the exceptions under 18 U.S.C. § 3632(d)(4)(D)(xxvii)." *United States v. Pemberton*, 2023 WL 2771476, at *1 (M.D. Fla. Apr. 4, 2023) (Covington, J.) (cleaned up). "Therefore, [Mersier] is statutorily excluded from earning credits" for Count 2. *Ibid.* On the other hand, Count 1— conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c)—*does* appear in the listed exceptions under § 3632(d)(4)(D)(xxvii), so a prisoner convicted of Count 1 *would* be eligible to earn FSA time credits. Mersier's lawyer was thus wrong when he said that Mersier "would be ineligible" for time credits "no matter what" count he pled guilty to. Mem. at 9.

The Eleventh Circuit has held that a lawyer violates the Sixth Amendment's guarantee of effective counsel when he "induce[s] his client to plead guilty based on patently erroneous advice." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985) (cleaned up). Here, though, Mersier can't show that his lawyer was ineffective for two reasons. *First*, his lawyer didn't *have* to tell Mersier that he'd be eligible for time credits if he pled guilty only to Count 1 because a lawyer's "failure to advise his client of *collateral consequences* of pleading guilty, other than deportation, is not a Sixth Amendment violation." *Sims v. United States*, 785 F. App'x 632, 634 (11th Cir. 2019) (emphasis added

14

& citation omitted). And the earning of time credits *is* a collateral consequence of pleading guilty. After all, they're not guaranteed; rather, "eligible prisoners earn time credits for successfully completing evidence-based recidivism programming," *Wilson v. Sawyer*, 2020 WL 7346550, at *3 (N.D. Fla. Nov. 13, 2020) (Fitzpatrick, Mag. J.), *report and recommendation adopted*, 2020 WL 7342656 (N.D. Fla. Dec. 14, 2020) (Walker, J.), making them "*potential* consequences [that] are clearly collateral" to a conviction and "about which a defendant [need not] be advised before the defendant enters the plea," *McCarthy v. United States*, 320 F.3d 1230, 1234 (11th Cir. 2003) (emphasis added & cleaned up).[3]

*Second*, even if Mersier could show deficient performance based on his lawyer's advice on a collateral issue, this subclaim is factually insufficient in two ways. *One*, Mersier argues that he was prejudiced because he "would have received . . . over 300 days off [his] sentence," Mem. at 9, but he doesn't tell us *how* or *when* he may have earned those credits. *Two*, Mersier's belief that he "would have been in a better position during the plea negotiation process" tells us *nothing* about whether the outcome of his plea negotiations would have been different had he known about his time-credit eligibility. *See Martin v. United States*, 703 F. App'x 866, 872 (11th Cir. 2017) ("To establish *Strickland* prejudice in the context of a plea bargain, the defendant must show the outcome of the plea process would have been different with competent advice."); *see, e.g.*, *McKay v. United States*, 2023 WL 2232020, at *4 (S.D. Ala. Feb. 1, 2023) (finding that the "bare allegation that [the defendant] would have insisted that counsel try to negotiate a better deal" if he had known that his guilty plea "would result in ineligibility for [FSA] prison rehabilitation programs" is "not sufficient to establish prejudice[.]"

---

[3] *See, e.g.*, *Johnson v. Dees*, 581 F.2d 1166, 1167 (5th Cir. 1978) ("[T]he failure to inform Johnson that he could be denied 'good time' [credits] concerned . . . a collateral consequence."); *Washington v. United States*, 2023 WL 7109830, at *3 (D.N.D. Oct. 27, 2023) ("Washington's 'good time' reduction [under 18 U.S.C. § 3632(d)(4)(A)(i)] is contingent on successful completion of at least 30 days of programming[.] This makes any reduction in sentence entirely speculative. Counsel did not have a duty to inform Washington of this hypothetical, collateral consequence[.]" (cleaned up)); *Johnson v. Mendoza-Powers*, 2008 WL 5245991, at *16 (C.D. Cal. Dec. 12, 2008) ("[T]ime credit issues are a collateral consequence of a conviction regarding which a defendant need not be advised." (citations omitted)).

(cleaned up)), *report and recommendation adopted*, 2023 WL 2224426 (S.D. Ala. Feb. 24, 2023) (Steele, J.). Mersier thus cannot show that "any hypothetical misstatement from counsel [about his FSA time-credit eligibility] impacted the sentence" we imposed. *Perry v. United States*, 2024 WL 4608851, at *5 (D. Maine Oct. 29, 2024) (cleaned up). We therefore **DENY** Subclaim Two.

### c.      Subclaim Three

In Subclaim Three, Mersier claims that his lawyer incorrectly advised him that "he would get less time in prison if he ple[d] guilty." Mem. at 11. Mersier's lawyer told him that he'd face "only 121–135 months" in prison if he pled guilty, *ibid.*, but Mersier was ultimately sentenced to 235 months, *see* Judgment, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. June 23, 2022), ECF No. 105 at 2. Mersier now says that he "would not have ple[d] guilty" but for that advice. Mem. at 11.

The record refutes any claim of prejudice. In his plea agreement, Mersier "underst[ood] and acknowledge[d] that the Court ha[d] authority to impose any sentence within and up to the statutory maximum authorized by law," and he accepted that he "may not withdraw his plea solely as a result of the sentence imposed." Plea Agreement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 9, 2022), ECF No. 73 at 2. Mersier also recognized that "the Court may impose up to a statutory maximum term of life" in prison for each of Counts 1 and 2. *Ibid.* That's not all. At his plea colloquy, and under oath, Mersier said that he understood the penalties he was facing by pleading guilty:

> [The Court:]          As to Count 1, it says that I may impose a statutory maximum term of imprisonment of up to life in prison, and that as to Count 2 . . . I must impose a mandatory minimum term of at least ten years in prison and up to life in prison. Do you understand the imprisonment penalties that you're facing if you do plead guilty here today?
>
> [Mersier:]            Yes, your Honor.

Plea Colloquy Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 123 at 12:18–24 (cleaned up). Because Mersier made these "statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false," *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)—a burden he hasn't come close to meeting here.

Since we "informed [Mersier] of his maximum possible sentence"—and because he understood those penalties—Mersier's "reliance on [his] attorney's mistaken impression about the length of his sentence is insufficient to render [his] plea involuntary[.]" *United States v. Himick*, 139 F. App'x 227, 228–29 (11th Cir. 2005) (cleaned up). There's thus no reasonable probability that Mersier would not have pled guilty but for his lawyer's advice. We **DENY** Subclaim Three.

## II.     The "Pretrial Stage" Ground

We'll now address Mersier's "pretrial stage" ground, in which he asserts six subclaims: that his lawyer was ineffective for (1) "failing to investigate sentencing enhancements" before he pled guilty ("Subclaim One"), Mem. at 4; (2) failing to "locate or interview" a victim who "made contradictory statements" ("Subclaim Two"), *id.* at 4–5; (3) failing to research "the effect that pleading guilty would have [had] on [his] ability to earn time credits via the First Step Act" ("Subclaim Three"), *ibid.*; (4) "failing to share all discovery," which Mersier "believe[s] exonerates [him] of Count 2" ("Subclaim Four"), *id.* at 5–6; (5) "misrepresent[ing]" the "services" he would perform for Mersier ("Subclaim Five"), *id.* at 6; and (6) "failing to inform Mersier of collateral consequences of taking the plea" ("Subclaim Six"), *id.* at 7.

Since Mersier entered his plea knowingly and voluntarily, he's waived his right to challenge any non-jurisdictional issues. *See Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam) (holding that a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea"); *see also Delpeche v. United States*, 2011 WL 1752231, at *4 (S.D. Fla. Mar. 17, 2011) (Goodman,

Mag. J.) ("[A] petitioner waives all claims of ineffective assistance of counsel relating to pre-plea issues when he enters a voluntary guilty plea." (citing *United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008)), *report and recommendation adopted*, 2011 WL 1752074 (S.D. Fla. May 9, 2011) (Hurley, J.); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000) (recognizing that "[a] voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant," which "includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary" (citation omitted)).

Mersier, in other words, has waived the arguments he advances in three of his subclaims—his lawyer's apparent failure to locate or interview the Victim in Subclaim Two; his lawyer's alleged failure to share exculpatory discovery in Subclaim Four; and his lawyer's supposed misrepresentation of services in Subclaim Five—because each is unrelated to the voluntariness of his plea. We therefore **DENY** Subclaims Two, Four, and Five.

As we'll explain, though, Mersier *does* seem to challenge the voluntariness of his plea agreement in Subclaims One, Three, and Six, so we'll address those in turn.

### a.      Subclaim One

In Subclaim One, Mersier says that, before he pled guilty, his lawyer didn't "investigate . . . three [ ] of [the] enhancements" we ultimately applied to his sentence. Mem. at 4. This subclaim fails because it's far too conclusory. For starters, Mersier doesn't tell us *which* three sentencing enhancements his lawyer allegedly failed to research, which "enhancements . . . [he] should not have received," or why he thinks he shouldn't have received them. *Ibid.*; *see, e.g.*, *Boykin v. United States*, 2022 WL 35931, at *5 (M.D. Fla. Jan. 4, 2022) (Howard, J.) (denying the movant's "vague and conclusory" claim that his lawyer "gave ineffective assistance by failing to investigate the United States Sentencing Guidelines or how many enhancements could be applied at sentence" because the movant "fail[ed] to explain which guidelines enhancements should not have applied and why not" (citing *Tejada v. Dugger*,

18

941 F.2d 1551, 1559 (11th Cir. 1991))). Mersier also can't show prejudice because he never alleges that, had his lawyer properly researched the sentencing enhancements, he wouldn't have pled guilty. *See* Mem. at 4–5. We therefore **DENY** Subclaim One.

### b.      Subclaims Three & Six

In Subclaims Three and Six, Mersier presents the same claim:  that his lawyer was ineffective for not researching Mersier's eligibility to receive FSA time credits.[4] But these subclaims are duplicative of Mersier's plea-stage subclaim on the same issue—a claim we've already rejected. *See* Mem. at 8 (alleging that his lawyer was "ineffective during the *plea stage*" for "[b]eing ignorant of the law relating to . . . which crimes were eligible and which were ineligible to receive time credits under the First Step Act" (emphasis added)). We therefore **DENY** Subclaims Three and Six as duplicative of Mersier's time-credits claim.

### III.    The "Sentencing Stage" Ground

Finally, in his "sentencing stage" ground, Mersier asserts three subclaims: that his lawyer was ineffective for (1) "not requesting a [sentence] reduction pursuant to § 3B1.2 of the United States Sentencing Guidelines" ("Subclaim One"), Mem. at 11; (2) "allowing false information at sentencing" ("Subclaim Two"), *ibid.*; and (3) "not informing" Mersier that he "could call"—and then not calling— "witnesses during sentencing" ("Subclaim Three"), *ibid.* All three subclaims are meritless.

### a.      Subclaim One

In Subclaim One, Mersier says that his lawyer "should have requested" a two-level reduction in his sentence "for [being a] minor participant" under § 3B1.2 of the Sentencing Guidelines. Mem. at 12. He alleges that he was "less culpable than the other participant"—co-defendant Barboza—and

---

[4] In Subclaim Three, Mersier contends that his lawyer failed to investigate "the effect that pleading guilty would have [had] on [his] ability to earn time credits via the First Step Act." Mem. at 4. In Subclaim Six, Mersier (again) argues that his plea was "render[ed] . . . involuntary" because his lawyer didn't tell him that he was "eligible" for FSA time credits on "one charge" but not the other. *Id.* at 7. He adds that he "would not have taken the plea" had he "know[n] all the consequences." *Ibid.*

that "his conduct was far less culpable than the average sex trafficker." *Id.* at 13. He adds that, "[a]ccording to the factual proffer," he "never brought" the Victim to "any dates," "never solicited, distributed or owned any photos" of the Victim, "never adverti[sed] the [V]ictim to customers," and never "made any online ad[s]," and that "there was never any threats, coercion, or force found in this case." *Ibid.* As we'll explain, Subclaim One fails because Mersier cannot show deficient performance under *Strickland.*

"A 'minor participant' is someone who is 'less culpable than most other participants, but whose role could not be described as minimal.'" *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) (quoting U.S.S.G. § 3B1.2 cmt. n.5). "There is a two-pronged inquiry to determine whether a role reduction applies, considering all probative facts involving the defendant's role and evaluating the totality of the circumstances." *United States v. Maldonado*, 855 F. App'x 629, 633 (11th Cir. 2021) (citing *United States v. Man*, 891 F.3d 1253, 1274 (11th Cir. 2018)). "Specifically, the district court is to consider the defendant's role: (1) in the relevant conduct for which she has been held accountable at sentencing; and (2) as compared to that of the other participants in her relevant conduct." *Ibid.* (citing *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016)).

"The district court is also to consider the totality of the circumstances of several factors when determining whether a defendant qualifies for a role reduction," including: (1) "the degree to which the defendant understood the scope and structure of the criminal activity"; (2) "the degree to which the defendant participated in planning or organizing the criminal activity"; (3) "the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority"; (4) "the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts"; and (5) "the degree to which the defendant stood to benefit

from the criminal activity." *Ibid.* (first quoting U.S.S.G. § 3B1.2 cmt. n.3(C); and then citing *United States v. Presendieu*, 880 F.3d 1228, 1249–50 (11th Cir. 2018)).

Mersier can't show that his lawyer acted deficiently by not seeking a reduction under § 3B1.2 because any such request would've been meritless. *See Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). True, at Mersier's sentencing hearing, we sustained his lawyer's objection to a "manager role" enhancement. Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124 at 23:23–24. In doing so, we explained that, "if we're not going to apply the manager role enhancement to Ms. Barboza, then, in fairness, we shouldn't be applying that same enhancement to Mr. Mersier." *Id.* at 23:23–24:1. In sustaining the objection, however, we made factual findings that belie any suggestion that Mersier was a minor participant in this scheme:

> [The Court]: [Mersier and Barboza] *were 50/50 partners.* It's true that at sentencing, [Barboza] told me that she didn't receive any money, but her text messages suggest otherwise. She also explicitly referred to herself as the manager. She drove the minor victim around, she set up all the dates with the text message, she's the one that took the photographs that were used to offer the minor victim up to the johns. And I think while it's true that Mr. Mersier maybe played an equal role in collecting money and orchestrating the crime, I'm not sure that his role was superior to Ms. Barboza on these facts.

*Id.* at 24:1–11 (emphasis added).

Later, when we applied the § 3553(a) factors, we made additional findings about Mersier's role and the extent to which he benefited from the conspiracy:

> [The Court]: [Mersier] several times had sex with the minor victim, then directed Ms. Barboza to take photographs of the minor victim naked, so that her photographs could then be distributed to potential johns. Sure enough, within the next

21

few days, the minor victim was driven, at the direction of Mr. Mersier and Ms. Barboza, to have sex with I think at least five different men, all of whom paid I think a hundred dollars each. That money went to Mr. Mersier and Ms. Barboza. The text messages from Mr. Mersier and Ms. Barboza reveal that they were not ashamed of this conduct, that . . . this was part of their business. Mr. Mersier, in fact, bragged . . . about how this is what he does, he teaches women to prostitute themselves for him as a pimp, and that's how he makes money, in part.

*Id.* at 32:23–33:11.

In short, the record forecloses any "minor-role" finding. Starting with the first prong, Mersier's "role" in the relevant conduct, *Maldonado*, 855 F. App'x at 633, was significant: He had sex with the Victim, directed Barboza to take and use photographs of the Victim, helped arrange the Victim's encounters with paying johns, and then kept for himself some of the money the Victim had earned through those commercial sex activities. Under the second prong, we already determined that Mersier and Barboza were "50/50 partners," equally responsible for the criminal scheme. Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124 at 24:1.

And the totality-of-the-circumstances factors support this finding. For instance, Mersier understood the scope and structure of the scheme, exercised "decision-making authority" over the criminal activity by directing Barboza's interactions with the Victim, and "stood to benefit" financially from his exploitation of the Victim. U.S.S.G. § 3B1.2 cmt. n.3(C). Since the record demonstrates that Mersier was *not* a "minor participant" in this conspiracy, any request for a sentence reduction under U.S.S.G. § 3B1.2 would have been futile. And Mersier's lawyer cannot have acted deficiently by failing to advance futile arguments at sentencing. *See, e.g.*, *United States v. Berry*, 314 F. App'x 486, 489 (3d Cir. 2008) ("Because . . . the evidence clearly indicates that Berry was not a minor/minimal participant in the offense, a motion for a downward adjustment under § 3B1.2 would not have succeeded.

22

Accordingly, counsel's performance was not deficient for failing to make such a motion."). We therefore **DENY** Subclaim One.

### b.      Subclaim Two

In Subclaim Two, Mersier says that his lawyer was ineffective for "allowing the Court to use false information at sentencing[.]" Mem. at 14. Specifically, he claims that we relied on false information in imposing two of the sentencing enhancements we applied to his total offense level: *first*, he argues that we found "that ads were made to solicit" the Victim and that we then used that finding to apply the "computer enhancement," *ibid.*; *second*, he says that we found the Victim "was engaging in sexually explicit conduct" to secure "a roof over her head" and that we then used that determination to apply the "vulnerable victim" enhancement, *id.* at 15 (cleaned up). On this latter issue, Mersier says that he "found evidence that it was false from a [contradictory] statement" the Victim made to an arresting FBI agent—and claims that his lawyer knew about this detail and still "chose not to object" at sentencing. *Id.* at 15–16. Mersier fails on both fronts.

**Computer Enhancement**. Mersier hasn't shown that his lawyer acted deficiently by not objecting to the facts we used to apply the computer enhancement. "Section 2G1.3(b)(3)(B) [of the Sentencing Guidelines] provides a two-level enhancement when 'the offense involved the use of a computer' to 'entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor.'" *United States v. Whyte*, 928 F.3d 1317, 1336 (11th Cir. 2019) (quoting U.S.S.G. § 2G1.3(b)(3)(B)). He says that neither his factual proffer nor his Presentence Investigation Report "included" the fact "that ads were made to solicit" sexual services with the Victim, and he insists that there was no "evidence of ads being placed [on] a computer[.]" Mem. at 14–15. We disagree.

At sentencing, "[t]he government bears the burden of establishing the applicability of a sentencing enhancement by a preponderance of the evidence." *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013) (citing *United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010)). That standard

"simply requires" the district court, acting as the factfinder, "to believe that the existence of a fact is more probable than its nonexistence." *United States v. Watkins*, 10 F.4th 1179, 1184 (11th Cir. 2021) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993)). "[P]hrased in a slightly different fashion, it is proof that persuades the trier of fact that a proposition is more likely true than not true." *Ibid.* (cleaned up). "The findings of fact of the sentencing court may be based on . . . facts admitted by a defendant's plea of guilty[.]" *United States v. Saunders*, 318 F.3d 1257, 1271 n. 22 (11th Cir. 2003) (cleaned up).

This is habeas, though, so Mersier—not the Government—bears the burden "of proving by a preponderance of the evidence that he is entitled to relief." *Moore v. Dugger*, 856 F.2d 129, 131 (11th Cir. 1988). His claim is that his lawyer was constitutionally ineffective for failing to object to the computer enhancement at sentencing. Liberally construed, Mersier's theory is straightforward: Had his lawyer objected, the Government would have been required to prove by a preponderance of the evidence that the enhancement applied—and, in Mersier's view, it could not have done so. To obtain habeas relief, then, Mersier must show that, more likely than not, the Government wouldn't have carried its burden at sentencing. *See, e.g.*, *Fergerson v. United States*, 694 F. App'x 685, 687 (11th Cir. 2017) (finding that the movant's lawyer was not ineffective for failing to object to a sentence enhancement because, "[i]f Fergerson's counsel had objected, the government would have been required to prove by a preponderance of the evidence" that the enhancement applied, and the record permitted the inference that "the government could prove" the facts necessary to support the enhancement (cleaned up)). Mersier fails to carry his burden here.

In his factual proffer, Mersier admitted that Barboza told the Victim "she could make a lot of money" by "advertising herself on the internet for commercial sex[.]" Factual Proffer Statement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. May 18, 2022), ECF No. 74 at 2. He also admitted that Barboza took provocative photos of the Victim with her cellphone "at Mersier's

24

request." *Ibid.* And he conceded that, "[a]fter th[ose] photographs were taken," Barboza drove the Victim to an apartment building, where an adult male paid Barboza $100 through "an internet-based money transfer application[ ] to have sex with [the] Victim." *Ibid.*

Mersier is technically right about one thing: The factual proffer never *expressly* says that the photos were electronically or physically sent to potential johns. But the Government didn't need *direct* proof of transmission because the Government may rely on "circumstantial evidence" to support a sentencing enhancement where the evidence "permits the sentencing court to infer" that the enhancement applies by a preponderance of the evidence. *United States v. Askew*, 193 F.3d 1181, 1185 (11th Cir. 1999). And, again, the Government only had to show that it was more likely than not that the photos Barboza took were used "to . . . solicit" potential johns to have sex with the Victim. U.S.S.G. § 2G1.3(b)(3)(B). We think the record allows us to infer that those photos were used to solicit paying johns. Barboza, after all, told the Victim that she could make money by *advertising* herself (presumably with photos, not essays, poems, or cartoons) for sex online; Barboza then took provocative cellphone photos of the Victim at Mersier's request; and—almost immediately after taking those photos—Barboza brought the Victim to a paying john for sex. From these undisputed facts, we have little trouble inferring that Barboza (with Mersier's knowledge and consent) used the photos she took of the Victim to solicit the paying john she then proceeded to drive the victim to have sex with.

Notably, at Mersier's sentencing, we drew that inference *explicitly* on the record:

> [The Court]: In this case, *there's no dispute* that the minor was asked to pose nude, and that Ms. Barboza, at Mr. Mersier's direction, took nude photographs of the minor, *which were then used to offer her up for sexual services* to some or maybe all of the five johns that are involved in this case.

Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124 at 16:19–23 (emphasis added).

25

Mersier hasn't undermined that finding by a preponderance of the evidence. True, he points to Barboza's statement to detectives that he "never" asked her to "post advertisements" of the Victim and that she "d[idn't] even think [Mersier] posted" the Victim online. Exhibit D [ECF No. 1-2] at 20. But the latter is irrelevant: The question isn't whether *he* posted photos of the Victim, but whether Barboza, the only other member of the conspiracy, did so. *See* U.S.S.G. § 2G1.3(b)(3) (asking only whether "*the offense involved* the use of a computer" (emphasis added)). And the former likewise doesn't matter. In a conspiracy, one party is responsible for the reasonably foreseeable acts of his co-conspirators, even if he didn't direct those acts. *See, e.g.*, *United States v. Carmona*, 625 F. App'x 963, 968 (11th Cir. 2015) ("G.E. testified that Carmona was present when Romby photographed her with his cell phone. Although Carmona may not have been certain at that moment that the photographs would be used to promote G.E.'s prostitution, once he and Romby told G.E. that she would have to 'make up' the cost of the MDMA they gave her by engaging in prostitution, it became reasonably foreseeable that Romby would use the cell phone (and the photographs taken with it) to facilitate the prostitution. . . . The [§ 2G1.3(b)] enhancement was therefore proper."). Here, of course, Barboza suggested—in Mersier's presence—that the Victim could make money by advertising herself for sex online, and Mersier then asked Barboza to take provocative photos of the Victim. We think it beyond cavil that it was thus reasonably foreseeable to Mersier that the offense would involve the use of a computer to "entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct" with the Victim. U.S.S.G. § 2G1.3(b)(3). To draw the opposite inference, we'd have to believe that Barboza took provocative cellphone photos of the Victim at Mersier's request with *no intention of sending them to anyone*—even though Barboza and Mersier were actively prostituting the Victim to multiple johns. That inference, we think, makes little sense on this record. Mersier's version would also require us to ignore the sequence of events, which saw Barboza driving the Victim to her first paying john *shortly* after taking provocative photos of the Victim. How did that john know about the Victim and agree

to have sex with her without having seen the photos Barboza had just taken? Mersier's story provides no answer to this question.

Mersier also argues that there's no "evidence of ads being placed [on] a *computer*[.]" Mem. at 14–15 (emphasis added). But modern cellphones with internet access (like Barboza's) plainly qualify as "computers" under § 2G1.3(b)(3)(B). *See United States v. Hill*, 783 F.3d 842, 845 (11th Cir. 2015) (recognizing that "a cell phone" is defined "as a computer for purposes of the guidelines under 18 U.S.C. § 1030(e)(1)" (citing *United States v. Kramer*, 631 F.3d 900, 902–03 (8th Cir. 2011))); U.S.S.G. § 2G1.3 cmt. n.1 (defining "computer" by reference to 18 U.S.C. § 1030(e)(1)).

At Mersier's sentencing, in short, the Government proved by a preponderance of the evidence that Barboza took provocative photos of the Victim on a computer to "solicit" potential johns to have sex with the Victim—and that Mersier knew about it. U.S.S.G. § 2G1.3(b)(3)(B). At the very least, Mersier hasn't met *his habeas burden* of showing by a preponderance that the Government failed to meet *its* burden at sentencing. And Mersier's lawyer couldn't have been deficient for failing to press a meritless objection. *See Pinkey v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1290, 1297 (11th Cir. 2017) (explaining that counsel cannot be "deficient for failing to perform a futile act, one that would not have gotten his client any relief"); *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient performance." (citation omitted)).

**Vulnerable Victim**. Mersier likewise hasn't shown that his lawyer acted deficiently by not objecting to the facts we used to apply the vulnerable-victim enhancement. Mersier says that we relied on text messages "between Barboza and an unidentified individual," in which Barboza noted that the Victim "was engaging in sexually explicit conduct solely for the purpose of having a roof over head," as reflected in the Presentence Investigation Report. Mem. at 15. He now says we shouldn't have considered that evidence because he "never agreed upon it [in] his factual proffer" and because it

27

conflicts with evidence he found in the Victim's prior statements. *Ibid.* Again, and for two reasons, we're unpersuaded.

*First*, we were entitled at sentencing to rely on unobjected-to portions of the PSI, even if they weren't included in the factual proffer. *See United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021) ("The sentencing court's factual findings may be based upon facts admitted by the defendant's guilty plea, undisputed statements in the PSI, or evidence presented at the sentencing hearing."). And "[p]aragraph 24 of the [PSI]," which no one objected to, included a text message from Barboza, in which Barboza wrote that the Victim was engaging in commercial sexual acts "for the benefit of getting a roof over her head." Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124 at 19:20–24. We thus properly relied on that piece of evidence.

In any event, for Mersier to justify an evidentiary hearing on his claim that we erred in relying on that evidence, he must support his allegations with a "specific factual proffer or evidentiary support." *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1293 (11th Cir. 2002), *overruled on other grounds by Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1353 (11th Cir. 2018); *see also Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on [an ineffective-assistance-of-counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."). And, because Mersier ultimately "has the burden of sustaining his contentions by a preponderance of the evidence," *Tarver v. United States*, 344 F. App'x 581, 582 (11th Cir. 2009), unsupported assertions alone won't suffice, *see Tejada*, 941 F.2d at 1559 (noting that a habeas applicant is not entitled to an evidentiary hearing when the "claims are merely conclusory allegations unsupported by specifics").

Here, Mersier offers *no* evidence for his claim that the PSI misstated the facts. He simply quotes two lines from a purported exchange between the Victim and an FBI agent, in which the Victim supposedly said that Mersier was "letting [her] stay" at his residence "as a favor" for someone else—

*not* in exchange for performing sexual services. Mem. at 16. Critically, though, Mersier *never* submitted a transcript of that interview or a sworn declaration from the Victim herself adopting that account. *See generally* Exhibits [ECF No. 1-2]. In fact, this alleged exchange *only* appears in Mersier's own *unverified* Memorandum, which doesn't carry the weight of an affidavit.[5] Mersier has therefore failed to "proffer to [us] . . . any evidence that he would seek to introduce at a hearing," which is alone enough to defeat this subclaim. *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006) (citations omitted).

*Second*, even if Mersier's lawyer had acted deficiently by not objecting to these facts, Mersier hasn't shown that he was prejudiced, because the record shows, beyond a shadow of a doubt, that the Victim *was* "unusually vulnerable." "The vulnerable victim enhancement is found in § 3A1.1(b)(1) of the Sentencing Guidelines, which provides for a two-level enhancement '[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim.'" *United States v. Lampley*, 620 F. App'x 801, 802 (11th Cir. 2015) (quoting U.S.S.G. § 3A1.1(b)(1)). A "vulnerable victim" is a person "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2. "Both a victim's circumstances and immutable characteristics can render a victim vulnerable for the purposes of the § 3A1.1(b) enhancement." *United States v. Hudson*, 822 F. App'x 888, 890 (11th Cir. 2020).

The Government easily met its burden of establishing that the Victim was unusually vulnerable here. As we explained at the hearing (all with facts Mersier doesn't challenge):

> [The Court]:    Here, though, it's not just the victim's age, although that is part of it. There's also these—

---

[5] Even if he *had* verified his Memorandum, Mersier couldn't use it as evidence of *the Victim's* version of events because he lacks personal knowledge of *her* interest in staying at his residence. *See, e.g.*, *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit."); *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))).

her status. She's a runaway from a foster home. She has no family, no parents, no phone, no car, no school, no supervision of any kind. She is—in addition to that, [the Guidelines] say[ ] "or who is otherwise particularly susceptible to the criminal conduct." She has no money, she has no source of food, no source of shelter or other sustenance.

Sentencing Hearing Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 124 at 19:8–15.[6]

Mersier argues that "none of this points to [him]," Mem. at 18, but that's not true. In his factual proffer, Mersier admitted that the Victim "had run away from her group home and did not have anywhere to stay" and that he "knew [the] Victim was under the age of 18 years old." Factual Proffer Statement, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. May 18, 2022), ECF No. 74 at 2. And he concedes that, in part because of her status as a runaway minor with no home and no source of income or food, the Victim was told that "she had to 'be nice' to Mersier since Mersier was allowing her to stay at [his] [r]esidence[.]" *Ibid.* Indeed, Mersier admits that, when the Victim arrived at his home, he "wanted to have sex with" her, and she "complied because she felt that she had to." *Ibid.* Mersier then joined Barboza in arranging for the Victim to perform sexual acts for paying johns. That's more than sufficient to show that the Victim was unusually vulnerable. *See United States v. Willoughby*, 742 F.3d 229, 241 (6th Cir. 2014) (upholding a § 3A1.1(b)(1) enhancement because the minor victim "was a homeless runaway with a history of abuse and neglect"); *United States v. Muslim*, 944 F.3d 154, 168 (4th Cir. 2019) (upholding a § 3A1.1(b)(1) enhancement because of the victim's homelessness). And our record is clear that Mersier either "target[ed] [the Victim] to take advantage of [her] perceived susceptibility to the offense" or "knew or should have known that the [Victim was]

---

[6] And we were permitted, in any case, to draw reasonable inferences from the evidence "based on common sense and ordinary human experience." *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013) (per curiam).

vulnerable"—either of which justified the enhancement. *Hudson*, 822 F. App'x at 890 (quoting *United States v. Frank*, 247 F.3d 1257, 1259–60 (11th Cir. 2001)).

We therefore **DENY** Subclaim Two.

### c.      Subclaim Three

In Subclaim Three, Mersier claims that his lawyer was ineffective for "not informing" him that he "could call witnesses" at his sentencing and for "not calling" "any witnesses at sentencing." Mem. at 16–17. He now insists that, had he "known he could call witnesses, he would have called his cousin Anthony," "his co-defendant," and "the Victim." *Id.* at 17. He alleges that "[e]ach of these [witnesses], to [his] knowledge, made contradictory statements to each other and the police," which Mersier "believes would have removed many enhancements and, indeed, changed his sentence." *Ibid.* For four reasons, Subclaim Three fails.

*First*, we reject Mersier's claim that he didn't know he could call witnesses at his sentencing. Even assuming that his lawyer never mentioned it to him, *we explicitly* told him so at his plea colloquy:

| [The Court]: | At your sentencing hearing, I will hear argument on . . . objections, and I will rule on those objections. I'll also give you the opportunity to allocute, that is, to speak to me on your own behalf before I impose [your] sentence, and/or to bring in any friends or family members or members of your community who may wish to speak to me on your behalf before I impose [your] sentence, though you need not feel like you have to do any of that. Do you understand all that? |
|---|---|
| [Mersier]: | Yes, [y]our Honor. |

Plea Colloquy Transcript, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. Mar. 31, 2023), ECF No. 123 at 31:8–17. And Mersier's sworn statements at his plea colloquy—in which he said he understood our offer to allow him to call witnesses at his sentencing—"carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

*Second*, a lawyer's failure to "call certain witnesses" is generally not "sufficient grounds for a Sixth Amendment claim." *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981); *see also McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) ("Claims that counsel failed to call witnesses are not favored on federal habeas review." (quoting *United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980))). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [we] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see also United States v. Long*, 674 F.2d 848, 855 (11th Cir. 1982) ("This Court will not second-guess tactical decisions of counsel in deciding whether to call certain witnesses."). These principles remain true at sentencing, when a lawyer has "[n]o absolute duty . . . to introduce mitigating or character evidence." *Hubbard v. Haley*, 317 F.3d 1245, 1260 (11th Cir. 2003) (quoting *Chandler v. United States*, 218 F.3d 1305, 1319 (11th Cir. 2000) (en banc)). A lawyer "who fail[s] to present any mitigating evidence, even when it is available at sentencing, may still be deemed constitutionally effective[,] provided that the decision not to present mitigative evidence was a tactical one based on the results of a reasonable investigation[.]" *Ibid.* (first citing *Burger v. Kemp*, 483 U.S. 776, 794–96 (1987); and then citing *Strickland*, 466 U.S. at 690–91). And Mersier never argues that his lawyer's refusal to call witnesses wasn't strategic or that it wasn't the product of investigation.

*Third*, even assuming that Mersier could show deficient performance for his lawyer's failure to call witnesses (or to inform him of his right to call witnesses) at sentencing, Mersier can't show prejudice. To establish prejudice, he must plead "facts showing" that his lawyer's performance "rendered his [proceeding] fundamentally unfair." *Guerra*, 628 F.2d at 413; *see also United States v. Alvarez*, 184 F. App'x 876, 881 (11th Cir. 2006) ("In the sentencing context, the [§ 2255 movant] must show a reasonable probability that his sentence would have been different." (citing *Peoples v. Campbell*, 377 F.3d 1208, 1244 (11th Cir. 2004))). And "a petitioner faces a particularly heavy burden to establish prejudice when they claim ineffective assistance for failing to call a witness." *Lemus v. Dep't of Corr.*,

2021 WL 8743230, at *1 (11th Cir. Dec. 29, 2021) (citing *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)). But all Mersier says is that his proposed witnesses "made contradictory statements" and that, had they testified, we would have "removed many enhancements" to his sentence. Mem. at 17. He doesn't tell us what those contradictory statements were, what the testimony of those witnesses would have been, which enhancements we would have removed, or how those witnesses otherwise would've helped reduce Mersier's sentence. *See D'Amico v. Sec'y of Dep't of Corr.*, 2014 WL 1248071, at *15 (M.D. Fla. Mar. 26, 2014) (Whittemore, J.) (noting that "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense" to "prevail on an ineffective assistance claim based on counsel's failure to call a witness" (quoting *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009))).

*Fourth*, even if the little Mersier has told us were enough, Mersier hasn't attached any affidavits from these witnesses and thus hasn't proven what, if anything, these witnesses would have said. *See generally* Exhibits [ECF No. 1-2]. And "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *Laster v. Sec'y, Dep't of Corr.*, 2025 WL 744715, at *10 (M.D. Fla. Mar. 7, 2025) (Honeywell, J.) (quoting *Ashimi*, 932 F.2d at 650); *see also Streeter v. United States*, 335 F. App'x 859, 864 (11th Cir. 2009) ("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof."). Since Mersier has failed to provide his proposed witnesses' affidavits or declarations, he hasn't shown "that there is a reasonable

probability" that those witnesses' testimony would have led to a sentence reduction. *Laster*, 2025 WL 744715, at *10.[7] We therefore **DENY** Subclaim Three.

### EVIDENTIARY HEARING

Because Mersier's § 2255 claims fail as a matter of law and are refuted by the record, we see no need to hold an evidentiary hearing in this case. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability ("COA") is appropriate only when the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'" *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)). Jurists of reason wouldn't debate our assessment of Mersier's constitutional claims, so we won't issue a COA.

---

[7] One more thing: We won't construe from Mersier's papers a separate claim that Mersier's lawyer was ineffective for failing to file a notice of appeal. Mersier timely filed a *pro se* appeal of his conviction on June 30, 2022. *See* Notice of Appeal, *United States v. Mersier*, No. 21-60094-CR-ALTMAN (S.D. Fla. June 30, 2022), ECF No. 108. And Rule 2(b) of the Rules Governing Section 2255 Proceedings requires a movant to "specify all the grounds for relief available" to him and "state the relief requested[.]" R. Governing § 2255 Proceedings 2(b)(1), (3). Although Mersier says in his "conclusion" that his lawyer "did not file a direct appeal, despite being asked by [Mersier] and his family multiple times," Mem. at 19, Mersier did *not* specify this as an independent ground for habeas relief and hasn't even asked for a belated appeal as relief.

CONCLUSION

We therefore **ORDER AND ADJUDGE** that:

1.      Frantz Mersier's Objections [ECF No. 26] are **OVERRULED**.

2.      The Report and Recommendation [ECF No. 25] is **ADOPTED in part**.

3.      Mersier's Motion to Vacate [ECF No. 1] is **DENIED**.

4.      A certificate of appealability is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are **TERMINATED**.

5.      The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on June 5, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record

35